IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| B ARMENT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DOLGENCORP, LLC, d/b/a DOLLAR GENERAL STORE, JEANYNNE STAMBAUGH, and JUSTIN PELLETIER, | ) Case No.: 2:18-cv-00026 CDP |
| | ) |
| Defendants. | ) |

### DEFENDANT DOLGENCORP, LLC'S REPLY SUGGESTIONS IN SUPPORT OF MOTION TO DISMISS OR ALTERNATIVE MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION

Defendant Dolgencorp, LLC d/b/a Dollar General ("Dollar General") submits the following Reply Memorandum in Support of its Motion to Dismiss or Alternative Motion to Stay Proceedings and Compel Arbitration (Docs. 24-25):

Arbitration proceedings are both favored and encouraged under Missouri law. *McCracken v. Green Tree Servicing, LLC*, 279 S.W.3d 226, 227 (Mo. Ct. App. 2009). Seeking to avoid this favored mechanism to resolve her claims and go back on her word as to how she would resolve workplace disputes, Arment is now attempting to distract the Court from a straightforward issue. But the material facts are not disputed:

- Arment and Dollar General agreed through a clear and unmistakable **delegation clause** that an arbitrator would decide whether the Agreement is a valid contract.

- By presenting the Agreement to Arment, Dollar General **offered** terms as to how employment-related disputes would be resolved: through arbitration.

- Arment **accepted** the terms of Dollar General's offer as evidenced by her electronic signature. Arment does not deny that she electronically signed the Agreement and did not exercise her option to "opt out" of the Agreement.

- There was proper **consideration** in that the terms of the Agreement are mutually binding on both Dollar General and Arment.

- There is **nothing unconscionable** about the Agreement as neither side has the ability to unilaterally modify the Agreement.

In short, the parties entered into a valid and binding agreement to arbitrate and it covers Arment's employment claims asserted here.  Arment's claims that the Agreement lacks consideration, lacks meeting or the minds, or is unconscionable are not supported by the record or case law, and therefore, this Court should enter an order dismissing Arment's claims, or alternatively, staying this action pending Arment submitting her claims to arbitration.

**I.    ARGUMENT**

    **A.    <u>An Arbitrator Must Determine Whether a Valid Contract Exists.</u>**

Arment first opposes arbitration by arguing the Agreement is not a valid contract.  But any such validity dispute must be decided by an arbitrator, not this Court, because the Agreement contains a clear and unmistakable delegation provision granting an arbitrator (not this Court) authority to decide threshold issues, including any dispute over the formation of the Agreement. Specifically, under the heading "Rules and Procedures," the Agreement incorporates the Employment Arbitration Rules of the American Arbitration Association:

> All arbitrations covered by this Agreement will be conducted in accordance with the terms set forth in this Agreement and the Employment Arbitration Rules of AAA, except as superseded by the terms of this Agreement.

*See* Exhibit A, Agreement p. 2.  According to AAA Employment Arbitration Rule 6.a, threshold validity disputes go to the arbitrator:

> The **arbitrator shall have the power to rule on** his or her own jurisdiction, including **any objections with respect to the existence,** scope, **or validity** of the arbitration agreement.

2

*See* AAA Employment Rule 6.a (emphasis added).[1]

Both federal and state law mandate that courts enforce delegation provisions like the one included in the parties' Agreement here, and cannot consider and rule on these issues themselves. In *Rent-A-Center West, Inc. v. Jackson*, the U.S. Supreme Court enforced a delegation provision in an employment-context arbitration agreement, recognizing "parties can agree to arbitrate 'gateway' questions of 'arbitrability,'" such as whether the parties have even agreed to arbitrate or whether the parties' agreement to arbitrate covers the particular claims at issue. 561 U.S. 63, 68-69 (2010). In *Green v. SuperShuttle International*, the Eighth Circuit found that where the parties had specifically incorporated the Rules of the AAA into their arbitration agreement – which Rules give arbitrators the power to determine their own jurisdiction over a controversy between the parties – the parties had agreed to allow the arbitrator to determine threshold questions of arbitrability and therefore the arbitrator (and not a court) must decide whether the dispute was subject to arbitration. 653 F.3d 766, 770 (8th Cir. 2011).

Similarly, in *State ex rel. Pinkerton v. Fahnestock*, the Missouri Supreme Court adopted the *Rent-a-Center* holding and noted that "a delegation provision is an additional, severable agreement to arbitrate threshold issues that is valid and enforceable unless a specific challenge is levied against the delegation provision." 531 S.W.3d 26, 53 (Mo. banc 2017). The factual allegations of *Pinkerton* are on point here. There, the defendant (like Dollar General here) sought to enforce the delegation provision of the parties' arbitration agreement, which was an explicit incorporation of the AAA Rules (like the Agreement here). *Id.* at 48. The Court held that where

---

[1] While the Agreement supersedes Rule 6.a with respect to "claims concerning the scope or enforceability" of the Agreement, it does not supersede Rule 6.a's grant of power to the arbitrator to determine the threshold issue of "validity" (*i.e.*, whether the parties have a valid contract). *See* Exhibit A, Agreement (indicating what is not a "covered claim"). *See Doty v. Dolgencorp, Inc.*, 2016 WL 1732768, at *1-*3 (E.D. Mo. May 2, 2016).

3

parties incorporate the AAA Rules into their arbitration agreement, there is a "clear and unmistakable" delegation of authority to the arbitrator. *Id.* ("By clearly referencing the AAA commercial arbitration rules, the parties expressed their intent to arbitrate any dispute under [the AAA] rules, including the AAA's 'jurisdiction' rule providing that the arbitrator shall have the power to rule on … objections with respect to the existence … or validity of the arbitration agreement."). The plaintiff challenged the arbitration agreement as a whole, arguing that there was no meeting of the minds as to arbitration and the arbitration agreement was unconscionable – similar to the arguments Arment makes here. *Id.* The Court ruled that because such challenges were to the arbitration agreement as a whole, and not to the delegation provision specifically, the circuit court was obligated to treat the delegation provision as valid under the FAA and enforce it. *Id.* The circuit court therefore did not err in sustaining the defendant's motion to compel arbitration, staying the case, and ordering the parties to arbitrate the threshold issue of arbitrability. *Id.* Like the plaintiff in *Pinkerton*, Arment's arguments here are unavailing because she has not made a single challenge to the delegation provision specifically.

Judge Rodney Sippel in the Eastern District of Missouri recently reached the same conclusion after evaluating the very Dollar General Employee Arbitration Agreement at issue here. *See Doty v. Dolgencorp, Inc.*, 2016 WL 1732768, at *1-*3 (E.D. Mo. May 2, 2016). In *Doty*, the plaintiff opposed Dollar General's motion to compel arbitration of his wage and hour employment claims under the Dollar General Employee Arbitration Agreement by arguing that the Agreement was invalid for lack of consideration and lack of mutuality of obligations – similar to Arment's arguments here. *Id.* at *3. Judge Sippel, relying on *Rent-A-Center* and *Green*, found (i) that the plaintiff's challenges to the Agreement were for the arbitrator to decide, not the court, given the parties' incorporation of the AAA Rules giving an arbitrator authority to rule on validity of the

4

Agreement, and (ii) that the plaintiff's challenges were to the validity of the Agreement as a whole, as "noticeably absent [was] any challenge directed specifically to the delegation provision," and therefore had to be decided by the arbitrator. *Id.* at *3-*4. Consequently, Judge Sippel concluded that he was required to "treat [the Agreement] as valid under [FAA] § 2, and … enforce it under [FAA] §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* (citing *Dotson v. Dillard's, Inc.*, 472 S.W.3d 599 (Mo. Ct. App. 2015)).

Accordingly, following *Rent-A-Center*, *Green*, *Pinkerton*, and *Doty*, any threshold question as to the validity of the Agreement must be determined by an arbitrator, not this Court, and the Court should grant Dollar General's motion to dismiss or stay this case pending arbitration.

### B.  Even if the Court Declines to Allow An Arbitrator to Determine Validity, this Court Should Find a Valid Contract to Arbitrate Exists.

Even if the Court determines that threshold validity issues should not go to the arbitrator, the Court should itself find a valid agreement to arbitrate exists.

#### 1.  There are Offer and Acceptance to Create a Valid Contract.

Notably absent from Arment's opposition brief is any assertion that *she* did not accept Dollar General's offer to arbitrate. Indeed, **Arment does not deny that she accepted the Agreement or that she clicked the button reading: "I agree to the terms of the Agreement. I understand and acknowledge that by clicking this box, both Dollar General and I will be bound by the terms of this Agreement."** *See* Exhibit A, Agreement; Exhibit C, Affidavit of James Matthew Payne ("Payne Aff.") ¶¶ 4-7. Rather, Arment is attempting to renege on her acceptance by claiming that there was no meeting of the minds because Dollar General did not physically sign the Agreement and the definition of "covered claims" is confusing. Both of these arguments are unavailing.

That Dollar General did not physically sign the Agreement does not nullify the otherwise

5

clear manifestation of its willingness to enter into and its intent to be bound by the Agreement. Arment's claim that the Agreement must be signed by both parties is not supported by case law. *See Baier v. Darden Rests.*, 420 S.W.3d 733, 738 (Mo. Ct. App. 2014) ("A party's signature on a contract remains the 'common, though not exclusive, method of demonstrating agreement'" and "a signature is not the only way to establish acceptance of … a bilateral contract."); *Howard v. Oakwood Homes Corp.*, 516 S.E.2d 879, 882 (N.C. Ct. App. 1999) ("[B]y proffering the [Dispute Resolution Program contract], defendant has at least implicitly agreed to be mutually bound by the [agreement] .... Moreover, the [agreement] provides that all arbitrations are to be conducted pursuant to the FAA.  The FAA requires that agreements to arbitrate be in writing, however, *such agreements need not be signed*.") (emphasis added).

Arment's reliance on *Baier v. Darden Restaurants* for the proposition that having a signature only from Arment is insufficient to form a bilateral contract is misplaced.  *Baier* does not require that both an employee and the employer sign an arbitration agreement to be valid. Rather, *Baier* questioned the employer's intent to be bound to the arbitration agreement at issue there because (as Arment fails to mention) *there was a specific line for the employer to sign on the agreement that the employer failed to sign*.  420 S.W.3d at 738.  Unlike the agreement in *Baier*, here there was no signature line on the Agreement for Dollar General that went unsigned. Arment's reliance on *Stephenson v. Village of Claycomo* is equally misplaced.  Contrary to her assertion, *Stephenson* did not require that both parties to an agreement physically sign the agreement.  Rather, *Stephenson* held that one party could not unilaterally modify an existing contract without the mutual assent of both parties. 246 S.W. 3d 22, 27 (Mo. Ct. App. 2007).

Arment has not cited (and cannot cite) any case law supporting her contention that the Agreement is invalid without a physical signature from Dollar General.  Indeed, Arment admits

6

that "it is not absolutely required that a party sign an agreement" where that party otherwise demonstrates a willingness to be bound. The Agreement does contain specific and definite terms under which Dollar General unambiguously offered to resolve disputes between the parties through arbitration. Dollar General also demonstrated a clear intent to be bound by the Agreement to the same extent as Arment in the following language:  it makes clear it is "**mutually binding**;" it states "[t]he procedures in th[e] Agreement will be the exclusive means of resolving Covered Claims relating to or arising out of your employment or termination of employment with Dollar General, **whether brought by you or Dollar General**;" it expressly states "**Dollar General** waives its right to file a lawsuit for any Covered Claims it may have against you, and **Dollar General waives** its right to a jury trial"; and it states "I understand and acknowledge that by checking this box, **both Dollar General and I** will be bound by the terms of this Agreement." *See* Exhibit A, Agreement.

Dollar General clearly demonstrated through its actions and language in the Agreement that it intended to be bound by the Agreement it offered to Arment: in August 2014, Dollar General offered the Agreement to Arment via its DGme online portal, demonstrating its willingness to enter into the Agreement with her; the Agreement then explained that it existed for the resolution of "employment related legal disputes;" the Agreement also explicitly bound Dollar General to bring its own employment-related claims to arbitration, expressly stating it is a "mutually binding agreement" and "any Covered Claims that Dollar General may have against you related to your employment will be addressed in the manner described in this Agreement;" and Dollar General gave Arment 30 days to review, consider, and accept the Agreement. *See* Exhibit A, Agreement; *Baier*, 420 S.W.3d at 738 (whether there is mutual assent depends on the intentions of the parties as evidenced by the language of the agreement). Given the foregoing, Arment's claim that she

7

was given no notice that Dollar General intended to enter into an agreement with her absent a physical signature lacks credibility. Dollar General clearly manifested a willingness to enter into a bargain with Arment, and therefore made an "offer" under Missouri law that was undeniably accepted by Arment. *See Agri Process Innovations, Inc. v. Envirotrol, Inc.*, 338 S.W.2d 381, 390 (Mo Ct. App. W.D. 2011).[2]

Further, Arment's claim that an unclear definition of "covered claims" precluded any meeting of the minds is also unavailing. She cites no legal authority in support of her contention that the use of the (common contractual) phrase "including, but not limited to …" is illusory. Use of this phrase does not allow Dollar General to pick and choose which claims will be covered by the Agreement and which will be excluded. Rather, the Agreement clearly states that covered claims are those "relating to or arising out of [Arment's] employment or termination of employment with Dollar General, whether brought by [Arment] or Dollar General." *See* Agreement. Then, *by way of example*, the Agreement says "[t]his includes, but is not limited to" various examples of common employment-related claims, except those precluded from arbitration by law or specifically excluded in the Agreement. *See id.* The scope of covered claims is clear: employment-related claims except those specifically carved out or precluded by law. Even the case relied on by Arment, *State ex. rel. Regional Convention & Sports Complex Authority v. Burton*

---

[2] Arment also claims Dollar General failed to manifest an intent to be bound by failing to raise the Agreement during Arment's charge of discrimination before the Equal Employment Opportunity Commission (EEOC) or during Arment's claim for unemployment benefits. But this argument ignores that the Agreement specifically excludes from "covered claims" charges of discrimination filed with the EEOC and claims for unemployment insurance benefits. *See* Exhibit A, Agreement. Such exclusions are specifically required to be included in employment-context arbitration agreements per the mandates of various administrative agencies and their corresponding statutes/regulations. *See, e.g.*, *E.E.O.C. v. Doherty Eters., Inc.*, 126 F. Supp. 3d 1305 (S.D. Fla. 2015) (EEOC sued employer for failing to include carve out in its mandatory arbitration program for employees to file administrative charges with the EEOC).

8

supports Dollar General's use of this phrasing in the Agreement.[3]  There, the Court found the parties' intent to arbitrate the claim at issue was clear based on the language of the agreement, which included the phrase: "Any controversy, dispute, or claim between the Parties hereto **including, without limitation,** any claim arising out of, in connection with, or in relation to the interpretation, performance or breach of this Lease shall be settled by arbitration." 533 S.W.3d at 227 (where the language of an arbitration provision is broad, any doubt as to arbitrability must resolved in favor of arbitration unless clear and unambiguous language excludes a certain dispute).

In short, Arment has not overcome Dollar General's showing that there was offer and acceptance to create a valid and enforceable contract.

## 2. There Was Consideration to Create a Valid Contract.

Arment also argues the Agreement lacks consideration because continued at-will employment does not provide adequate consideration and that, despite Dollar General's mutual promises, it did not give up anything of value.  But Dollar General does not argue that continued at-will employment acts as consideration for the Agreement.  Rather, Dollar General argues the parties' mutuality of obligation is sufficient consideration.  Missouri case law specifically provides that mutuality of obligation (*i.e.* both parties agreeing to arbitrate all employment-related claims) can constitute sufficient consideration for an employment-context arbitration agreement.  *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 808-809 (Mo. banc 2015) (employment arbitration agreement was supported by adequate consideration where both employer and employee were bound); *McIntosh v. Tenet Health Systems Hospitals Inc.*, 48 S.W.3d 85, 89 (Mo. Ct. App. 2001) (enforcing

---

[3] Arment relies on the Eastern District Court of Appeals' decision in *State ex rel. Regional Convention and Sports Complex Authority v. Burton*, 2016 WL 7387705 (E.D. Mo. Dec. 20, 2016) (finding claim was excluded from arbitration agreement).  But the case was transferred to the Missouri Supreme Court, which reached a different conclusion.  *See State ex rel. Regional Convention and Sports Complex Authority v. Burton*, 533 S.W.3d 223 (Mo. banc 2017) (finding claim *was not excluded* from arbitration agreement).

arbitration agreement where employee signed mutual arbitration clause agreeing, along with company, to submit claims to arbitration). Arment has not demonstrated that the parties' promises were not mutual and has not overcome binding case law finding mutual promises sufficient to support an employment arbitration agreement; she simply complains that her rights to a jury trial are more valuable than Dollar General's rights. This is insufficient to overcome Dollar General's showing that there was sufficient consideration to create a valid contract.

### 3. The Agreement is Not an Unconscionable Contract

Arment's final claim that the Agreement is unenforceable as unconscionable also fails. Arment restates the holdings of all recent Missouri cases failing to uphold employment arbitration agreements as unconscionable, yet fails to show how any one of the cases is on point here. Indeed, she cannot. In *Katz*, the court found that continued at-will employment was insufficient consideration for an employment arbitration agreement; it had nothing to do with unconscionability and is inapplicable here where Dollar General has already demonstrated consideration based on mutuality of obligation. *Katz v. Anheuser-Busch Inc.*, 347 S.W.3d 533 (Mo. Ct. App. 2011). In *Whitworth*, the court declined to uphold an employment arbitration agreement as unconscionable where the parties' mutual agreement to arbitrate was illusory as the employer maintained a unilateral right to modify the contract without notice to the employee; such holding is inapplicable here where Dollar General did not retain any right to modify the agreement. *Whitworth v. McBride and Son Homes Inc.*, 344 S.W.3d 730 (Mo. Ct. App. 2011). In *Frye*, the court similarly declined to uphold an employment arbitration agreement where the employer was not bound to the agreement and the employer also retained the right to unilaterally modify the agreement; such holding is inapplicable here where Dollar General did agree to mutual obligations to arbitrate and did not retain any right to modify the agreement. *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429 (Mo. Ct. App. 2010). Arment admits the Agreement contains no

language regarding modification. Neither party has the ability to unilaterally modify the Agreement. Thus, Arment's citations are to no avail and the Agreement is enforceable.

As a final attempt to avoid her obligations under the Agreement, Arment also claims that the Agreement violates her right to a trial by jury under the Missouri Constitution. But she cannot dispute that arbitration agreements are legal, binding, and enforceable under Missouri law, and a party *can* waive their right to a jury trial. Arment did so here. Dollar General's Agreement clearly advised her that by signing the Agreement, "[y]ou expressly waive your right to file a lawsuit in court against Dollar General. … You also waive your right to a jury trial." *See* Agreement. Recognizing the importance of the right being waived, the Agreement further warned at the outset: "Please read this entire document carefully. This is an important document that concerns legal rights, so please take your time and consult with an attorney if necessary." *Id.* Dollar General further gave Arment thirty days to consider the Agreement or to opt-out of the Agreement. *Id.* That Arment may not have taken sufficient time to thoughtfully read and consider the Agreement before signing it – despite Dollar General's warnings – is insufficient to renege on her obligations. *See Sanger v. Yellow Cab Co., Inc.*, 486 S.W.2d 477, 481 (Mo. banc 1972) ("The rule is that the one who signs a paper, without reading it, if he is able to read and understand, is guilty of such negligence in failing to inform himself of its nature that he cannot be relieved from the obligation contained in the paper thus signed, unless there was something more than mere reliance upon the statements of another as to its contents[.]") (internal quotations omitted). This is not a situation where the Agreement was "deemed agreed to" by Arment after a period of inaction; rather, Arment was presented with the Agreement and voluntarily clicked the button reading: "I agree to the terms of the Agreement." *See* Exhibit C, Payne Affidavit ¶6.

In sum, Arment's arguments are insufficient to demonstrate an unconscionable contract.

11

## II.     CONCLUSION

Dollar General is not trying to force Arment to arbitrate disputes that she did not agree to arbitrate.  First, because Arment made no challenge to the Agreement's clear and unmistakable delegation provision, any dispute as to the validity of the Agreement must be decided by the arbitrator, not this Court.  Second, even if this Court determined the validity of the Agreement, as discussed above and in Dollar General's opening Memorandum in Support, the Agreement meets all the necessary elements to form a valid contract under Missouri law, and Arment's claims fall squarely within its scope.  Accordingly, Dollar General respectfully asks the Court to compel arbitration and dismiss this lawsuit in accordance with the parties' agreement or, in the alternative, stay proceedings pending completion of the arbitration.

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ René L. Duckworth
Justin M. Dean MO 48647
4520 Main Street, Suite 400
Kansas City, MO 64111
Telephone: 816.471.1301
Facsimile: 816.471.1303
justin.dean@ogletree.com

René L. Duckworth, MO #62070
7700 Bonhomme Avenue, Suite 650
St. Louis, MO 63105
(314) 802-3965
(314) 802-3936 (*facsimile*)
rene.duckworth@ogletreedeakins.com

**ATTORNEYS FOR DEFENDANT DOLGENCORP, LLC, D/B/A DOLLAR GENERAL**

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on the 6th day of August, 2018, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Kevin Baldwin
Eric Vernon
14 South Main Street
Liberty, MO  64068
(816) 842-1102
(816) 842-1104 (Facsimile)
Kevin@bvalaw.net
Eric@bvalaw.net

**ATTORNEYS FOR PLAINTIFF**

                                          /s/ René L. Duckworth
                                          **ATTORNEY FOR DEFENDANTS**

35100786.1